IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| JONATHAN S. EHRLICH, | |
| Plaintiff, | |
| v. | Civil No. 20-6398 (RBK/KMW) |
| | **OPINION** |
| ALVAREZ, et al., | |
| Defendants. | |

**KUGLER**, United States District Judge:

Presently before the Court is Defendants' Motion to Dismiss the Complaint (Doc. No. 7), and Plaintiff's Motion for an Entry of Judgment Against Defendants (Doc. No. 14). For the reasons set forth below, Defendants' Motion to Dismiss is **GRANTED** and Plaintiff's Motion (Doc. No. 14) is **DENIED**.

## I. BACKGROUND

Plaintiff Jonathan Ehrlich, the sole beneficiary of his uncle's multi-million-dollar estate, filed suit against various state court judges and administrators, the New Jersey Attorney General, the Governor of New Jersey, and the Chief Justice of the New Jersey Supreme Court alleging a statewide conspiracy to deprive him of his constitutional rights. Although framed as an attempt to seek redress for the deprivation of his constitutional rights, the injuries complained of and relief sought in the Complaint demonstrate that Plaintiff merely disagrees with the state court decisions.

### A. Factual Background

Plaintiff Jonathan Ehrlich ("Mr. Ehrlich") brought suit under 42 U.S.C. § 1983 against eleven New Jersey state court judges, two county surrogates, two deputy surrogates, Governor Murphy, Attorney General Grewal, the Acting Administrative Director of the Courts, the Director of the Office of the Advisory Committee on Judicial Conduct, and two county surrogate courts alleging they conspired to deprive him of his Fifth and Fourteenth Amendment rights to a fair and impartial hearing and to discovery or cross-examination. (Doc. No. 8, Am. Compl. at ¶¶ 74, 113–114).[1] The crux of Mr. Ehrlich's claim is that the Defendants conspired to protect one of their own—Judge McInerney, who allegedly committed fraud while acting as administrator of Plaintiff's uncle's estate—by denying any wrongdoing on his part and rejecting his legal malpractice claim. (*Id.* at ¶¶ 28, 31, 38, 94–95). The byproduct of this alleged conspiracy was a deprivation of Mr. Ehrlich's constitutional rights. (*See id.* at ¶¶ 38, 61). Among other remedies, Mr. Ehrlich seeks injunctive relief from this Court and requests that we order the Chief Justice of the New Jersey Supreme Court to publish a public apology stating that the previous rulings bear no resemblance to any verified facts of the case nor the truth.

The alleged conspiracy began in November of 2009, when after the passing of Richard Ehrlich—a long-time estate attorney in New Jersey and Mr. Ehrlich's uncle—then Assignment

---

[1] The named Defendants are as follows: (1) Gubir S. Grewal, New Jersey Attorney General; (2) John Tonelli, former Director of the Office of the Advisory Committee on Judicial Conduct; (3) Philip Murphy, the Governor for the State of New Jersey; (4) the Honorable Carmen Alvarez, presiding judge for the New Jersey Superior Court, Appellate Division; (5) the Honorable Francine Axelrad, a New Jersey Superior Court judge; (6) the Honorable Mary C. Jacobson, Assignment Judge for the New Jersey Superior Court; (7) the Honorable Karen Suter, judge for the New Jersey Superior Court, Appellate Division; (8) the Honorable Michael Hogan, retired judge for the New Jersey Superior Court; (9) the Honorable Michael Kassel, a New Jersey Superior Court judge; (10) the Honorable Susan Maven, judge for the New Jersey Superior Court, Appellate Division; (11) the Honorable Stuart Rabner, Chief Justice of the New Jersey Supreme Court; (12) the Honorable Ronald Bookbinder, former Assignment Judge for the New Jersey Superior Court; (13) the Honorable Richard Geiger, judge for the New Jersey Superior Court, Appellate Division; (14) the Honorable William Nugent, judge for the New Jersey Superior Court, Appellate Division; (15) the Honorable Harry O'Malley, former Deputy Surrogate of Mercer County; (16) the Honorable Diane Gerofsky, Surrogate for Mercer County; (17) the Honorable Bonnie Madera, Deputy Surrogate for Burlington County; (18) the Hon. George Kotch, former Burlington County Surrogate; and (19) the Hon. Glenn A. Grant, J.A.D., Acting Administrative Director of the Courts. (*Id.* at ¶¶ 2–5).

Judge of the Burlington Vicinage, Judge Bookbinder, appointed Judge Dennis P. McInerney as temporary trustee of decedent's law practice. (*Id.* at ¶ 57). Upon learning of his uncle's death, Mr. Ehrlich searched his uncle's house for the will and found an unsigned, copy typed on his uncle's legal stationary. (*Id.* at ¶ 58). Due to its unsigned nature, a will contest ensued between Mr. Ehrlich and his two siblings. (*Id.* at ¶ 60). In December of 2009, Judge McInerney was appointed as temporary administrator of the contested estate by probate Judge Hogan and served in this role until July of 2013. (*Id.* at ¶¶ 61, 70). This appointment allegedly created a conflict of interest because Judge Hogan and McInerney were friends for almost 30 years.

On April 20, 2011, Judge Hogan ordered the will copy admitted and ordered that Judge McInerney remain as administrator. (*Id.* at ¶ 78). The entire estate, less a token amount to Plaintiff's two siblings, was bequeathed to Plaintiff. (*Id.*). On June 1, 2011, Hogan denied a motion for reconsideration on admission of the will to probate, and the appellate division affirmed. (*Id.* at ¶ 80). This issue was appealed to the New Jersey Supreme Court but was eventually settled in April of 2013. (*Id.* at ¶ 86).

While this appeal was pending, Judge Hogan was replaced by Judge Suter. (*Id.* at ¶ 81). In early 2012, Judge Suter heard Plaintiff's motion to remove Judge McInerney as temporary administrator. (*Id.* at ¶ 82). Plaintiff sought removal of Judge McInerney because of his alleged perjury but this allegation was considered and ultimately rejected. (*Id.* at ¶ 83). Judge Suter also refused to find any basis to vacate Judge Hogan's 2011 order admitting an allegedly fraudulent accounting. (*Id.*).

Around the same time of Plaintiff's motion to remove Judge McInerney, Judge Suter granted Judge McInerney's motion to sell the decedent's riverfront property to a friend of Judge McInernery for less than the fair market value of the land. (*Id.* at ¶ 84). She also granted Judge

McInerney's motion to pay a Burlington County politician a substantial settlement from the estate. (*Id.*).

On July 5, 2013, Judge Bookbinder transferred the case to Mercer County with Judge Jacobson presiding over the case. (*Id.* at ¶ 87). In a 64-page opinion, Judge Jacobson rejected Mr. Ehrlich's challenge to Judge McInerney's second accounting, refused hisrequest to question Judge McInerney, and denied his request to serve as temporary administrator of his uncle's estate. (*Id.* at ¶ 90). Judge Jacobson also allegedly ordered Mr. Ehrlich to sign a release fully indemnifying Judge McInerney prior to transferring any remaining estate funds. (*Id.* at ¶ 92). Mr. Ehrlich refused to sign this release. (*Id.* at ¶ 93).

An ancillary legal malpractice case was transferred from Mercer to Camden County in 2015. (*Id.* at ¶ 94). Judge Kassel dismissed the case on December 14, 2016, finding there was nothing in the facts to overcome the rebuttable presumption that his uncle deliberately destroyed the will. (*Id.* at ¶ 95). This decision and others were affirmed on appeal. (*Id.* at ¶ 99). However, Mr. Ehlrich was hindered in his timely appeal of these decisions to the New Jersey Supreme Court because Judge Alvarez, who presided over these appeals at the intermediate appellate court, delayed mailing decisions. (*Id.* at ¶¶ 100–104).

The Surrogate Courts of Mercer and Burlington County were also wrapped up in this conspiracy as they glossed over and rubber-stamped various erroneous accountings presented by Judge McInerney. (*Id.* at ¶ 105). They also would "not return phone calls or acknowledge filings by [Mr. Ehlrich's] attorney while immediately accommodating [Judge] McInerney's every whim." (*Id.* at ¶ 106).

There was also repeated efforts to stonewall Mr. Ehlrich from contesting Judge McInernery's administration of the estate and almost every state court decision was made absent a plenary hearing. (*Id.* at ¶¶ 113–114).

### B. Procedural History

On May 1, 2020, Plaintiff filed a complaint against Defendants asserting violations of his constitutional rights guaranteed by the Fifth and Fourteenth Amendment under 42 U.S.C. § 1983. (Doc. No. 1). After Defendants moved to dismiss the complaint, Plaintiff filed an amended complaint. (Doc. No. 7, 8). On October 23, 2020, Plaintiff filed another motion seeking an entry of default and requesting that Defendants' motion to dismiss be denied as moot. (Doc. No. 14).

## II. LEGAL STANDARD

### A. Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(1)

Rule 12(b)(1) of the Federal Rules of Civil Procedure allows a court to dismiss a complaint for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Subject matter jurisdiction is the Court's authority to hear a case. If a case, as presented by the plaintiff, does not meet the requirements of subject matter jurisdiction or if it is otherwise barred by law, then the Court must dismiss the plaintiff's action.

The plaintiff generally has the burden of establishing that the court has subject matter jurisdiction. *Lightfoot v. United States*, 564 F.3d 625, 627 (3d Cir. 2009). The defendant can challenge whether the plaintiff has done so, through either a facial challenge or a factual challenge to the complaint. *In re Horizon Healthcare Servs. Data Breach Litig.*, 846 F.3d 625, 632 (3d Cir. 2017).

In a facial challenge, the court looks to the face of the complaint and accepts as true the facts alleged by the plaintiff. *Hartig Drug Co. v. Senju Pharm. Co.*, 836 F.3d 261, 268 (3d Cir.

2016). If the court cannot conclude, based on face of the complaint, that jurisdictional requirements are met, then the court must dismiss the complaint. *In re Horizon Healthcare Servs. Data Breach Litig.*, 846 F.3d at 633 (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). In other words, a facial challenge "calls for a district court to apply the same standard of review it would use in considering a motion to dismiss under Rule 12(b)(6)." *Constitution Party v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014). Thus, "'[t]hreadbare recitals of the elements of [jurisdiction], supported by mere conclusory statements, do not suffice.'" *In re Horizon Healthcare Servs. Data Breach Litig.*, 846 F.3d at 633 (quoting *Iqbal*, 556 U.S. at 678). In a factual challenge, however, the plaintiff's factual allegations are not presumed to be true, and the court "is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Hartig Drug Co.*, 836 F.3d at 268. A factual challenge may only be raised after an answer has been filed. *Long v. SEPTA*, 903 F.3d 312, 320 (3d Cir. 2018). Thus, any motion to dismiss for lack of subject matter jurisdiction filed prior to an answer is, by default, a facial challenge. *Id.*

**B. Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6)**

Federal Rule of Civil Procedure 12(b)(6) allows a court to dismiss an action for failure to state a claim upon which relief can be granted. When evaluating a motion to dismiss, "courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)). In other words, a complaint survives a motion to dismiss if it contains enough factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

To make this determination, courts conduct a three-part analysis. *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010). First, the Court must "tak[e] note of the elements a plaintiff must plead to state a claim." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). Second, the Court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* (quoting *Iqbal*, 556 U.S. at 680). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (quoting *Iqbal*, 556 U.S. at 678). Finally, "when there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Id.* (quoting Iqbal, 556 U.S. at 679). A complaint cannot survive a motion to dismiss where a court can only infer that a claim is merely possible rather than plausible. *Id.*

## III. DISCUSSION

Plaintiff seeks to hold Defendants liable for depriving him of his 5th and 14th Amendment rights in violation of 42 U.S.C. § 1983. Defendants, being state officials and mostly judges, move to dismiss the Complaint on sovereign immunity grounds under the 11th Amendment, the absolute judicial immunity doctrine, the *Rooker-Feldman* doctrine, and under Rule 12(b)(6) because the allegations are conclusory.[2] Plaintiff contends that Defendants' motion to dismiss is rendered moot by virtue of his amended complaint and that this Court should enter default judgment against Defendants because they have failed to respond to his amended complaint. Both of Plaintiff's arguments are meritless.

---

[2] Defendants also argue Plaintiff's claims are barred because they are not "persons" within the meaning of 42 U.S.C. § 1983. Although we will briefly address Section 1983 because of its overlap with sovereign immunity, we need not address this argument or the *Rooker-Feldman* doctrine in full because the other arguments resolve this matter.

7

First, we cannot grant Plaintiff's request for entry of default judgment because there is not entry of default by the Clerk of the Court. *J & J Sports Prods., Inc. v. Archie*, No. 1:17-CV-00745, 2019 WL 1125876, at *1 (M.D. Pa. Mar. 12, 2019). Second, although an amended complaint can render a motion to dismiss moot, when the same deficiencies that were present in the original complaint remain in the amended complaint, the Court may treat the motion to dismiss as being addressed to the amended complaint. *Jordan v. City of Philadelphia*, 66 F. Supp. 2d 638, 641 n.1 (E.D. Pa. 1999) (noting "Defendants . . . 'are not required to file a new motion to dismiss simply because an amended pleading was introduced while their motion was pending. If some of the defects raised in the original motion remain in the new pleading, the court simply may consider the motion as being addressed to the amended pleading.'") (quoting 6 Charles A. Wright, Arthur R. Miller, and Mary Kay Kane, Federal Practice and Procedure § 1476 (2nd ed. 1990)). Therefore, because the same deficiencies that pervaded Plaintiff's original complaint remain in his amended complaint, we will treat Defendants' motion to dismiss as being addressed to the amended complaint.

### A. Section 1983 and Sovereign Immunity

As you might remember, Plaintiff sued eleven New Jersey state court judges, two county surrogates, two deputy surrogates, Governor Murphy, Attorney General Grewal, the Acting Administrative Director of the Courts, the Director of the Office of the Advisory Committee on Judicial Conduct, and two county surrogate courts under Section 1983. Defendants contend that they are state officials and therefore this this Court lacks subject matter jurisdiction, a Rule 12(b)(1) challenge, due to the Eleventh Amendment. We agree that the majority of Plaintiff's claims are barred by sovereign immunity. However, where we depart from Defendants is their overbroad argument that they are entitled to sovereign immunity for *all* of Plaintiff's claims.

This is not so. Plaintiff has managed to thread the needle and avoid a complete dismissal of his Complaint on sovereign immunity grounds by asserting a claim against Defendants in their individual capacities for money damages.

The Eleventh Amendment "is a jurisdictional bar which deprives federal courts of subject matter jurisdiction" over actions against a State. *Grohs v. Yatauro*, 984 F. Supp. 2d 273, 280 (D.N.J. 2013). The state's immunity from suit also extends to "arms" of the state, such as agencies or departments. *Id.* The Superior Court of New Jersey and its vicinages are part of the judicial branch of the State of New Jersey and are thus protected by the Eleventh Amendment. *See Johnson v. State of New Jersey*, 869 F.Supp. 289, 296–98 (D.N.J.1994); *see also Hunter v. Supreme Court of New Jersey*, 951 F.Supp. 1161, 1177 (D.N.J.1996), aff'd, 118 F.3d 1575 (3d Cir.1997). Therefore, to the extent that Plaintiff seeks to sue the two county surrogate courts—courts created by the New Jersey constitution—we find his claims barred the Eleventh Amendment. *See Matter of Conda*, 72 N.J. 229, 234 (1977) (finding the surrogate to be a judicial officer performing important judicial functions in our court system and therefore subject to the administrative oversight of the Chief Justice and the Supreme Court); N.J. Const. art. VII, § 2; *Hernandez v. Switzer*, No. CIVA 09-2758 NLH KMW, 2009 WL 4730182, at *3 (D.N.J. Dec. 4, 2009) (concluding a New Jersey Municipal Court is entitled to sovereign immunity); *Kapitanova v. Ameriprise Tr. Co*., No. 19-CV-5886 (CM), 2019 WL 2918133, at *2 n.1 (S.D.N.Y. July 8, 2019) (noting a plaintiff cannot assert a Section 1983 claim against the surrogate court because it is an arm of the state).

State officials are also entitled to immunity from suit for monetary damages when acting in their official capacities. *Stephens v. Kenney*, 802 F. App'x 715, 719 (3d Cir. 2020); *A.W. v. Jersey City Pub. Sch*., 341 F.3d 234, 238 (3d Cir. 2003). These principles are consistent with the

interpretation of a "person" under Section 1983; "neither a State nor its officials acting under their official capacities are 'persons' under § 1983." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989).

There are only three exceptions to Eleventh Amendment immunity: "(1) abrogation by an Act of Congress, (2) waiver by state consent to suit; and (3) suits against individual state officials for prospective relief to remedy an ongoing violation of federal law." *M.A. ex rel. E.S. v. State-Operated Sch. Dist.*, 344 F.3d 335, 345 (3d Cir. 2003). Moreover, Eleventh Amendment immunity does not bar suits against state officials sued in their individual capacity. *See Hafer v. Melo*, 502 U.S. 21, 26 (1991) (holding state officials sued in their individual capacity are "persons" for purposes of § 1983); *Walker v. Beard*, 244 Fed. App'x. 439, 440 (3d Cir. 2007).

The first exception, congressional abrogation, does not apply in this case because "Congress did not abrogate states' sovereign immunity when it enacted 42 U.S.C. § 1983." *Walker v. Beard*, 244 Fed. App'x. 439, 440 (3d Cir. 2007). The second exception, state waiver, also does not apply in this case because Plaintiff, as the party with the burden to prove subject matter jurisdiction, has not raised this issue. Therefore, we are left with the last two avenues which provide a means to vitiate a state official's immunity.

A plaintiff may sue a state official, individually, for a constitutional violation under the legal fiction of *Ex parte Young*, so long as they seek prospective injunctive or declaratory relief. *Ex parte Young*, 209 U.S. 123, 159–60 (1908); *see Alden v. Maine*, 527 U.S. 706, 757 (1999). In order to do so, however, the claim must be against a state official for ongoing violations of federal law. *Wheeling & Lake Erie R. Co. v. Pub. Util. Comm'n of Com. of Pa.*, 141 F.3d 88, 91 (3d Cir. 1998). Moreover, Eleventh Amendment immunity does not bar suits against state officials sued in their individual capacity. *See Hafer v. Melo*, 502 U.S. 21, 26 (1991) (holding

state officials sued in their individual capacity are "persons" for purposes of § 1983); *Walker v. Beard*, 244 Fed. App'x. 439, 440 (3d Cir. 2007). Because damage remedies from a state official acting in his or her individual capacity would come from that individual's personal assets, the state would not be the real party of interest. *Id.* "In determining whether [a plaintiff has sued an official] in her personal capacity, official capacity, or both, [courts] . . . look to the complaints and the course of proceedings." *Garden State Elec. Inspection Servs. Inc. v. Levin*, 144 F. App'x 247, 251 (3d Cir. 2005).

Although not expressly stated in the body of the Complaint, it appears Plaintiff is suing Defendants in both their official and individual capacity. With the exception of Governor Murphy and Attorney General Grewal—who are only sued in their official capacity—Plaintiff labels each Defendant in the caption of the Complaint as being sued "in their individual and official capacity." Likewise, Plaintiff seeks monetary damages not only from the State of New Jersey but also from each Defendant. *Garden State Elec. Inspection Servs. Inc. v. Levin*, 144 F. App'x 247, 251 (3d Cir. 2005) (considering who the plaintiff sought damages from in order to determine whether the defendants were being sued in their official or individual capacities). Therefore, we will construe Plaintiff's complaint as asserting claims against the Defendants in both their official and individual capacities.

It is beyond peradventure that Plaintiff's claims against the state Defendants in their official capacities for money damages are barred by sovereign immunity. *Reardon v. New Jersey*, No. CIV. 13-5363 NLH, 2014 WL 2921030, at *4 (D.N.J. June 27, 2014) (explaining that as officers of the state of New Jersey, state court judges enjoy sovereign immunity); *Green v. Essex Cty. Superior Ct. Clerk*, No. CIV.A. 02-1872 (GEB), 2006 WL 932055, at *3 (D.N.J. Apr. 6, 2006) (dismissing a claim against the Essex County Superior Court Clerk because of sovereign

immunity); *Matter of Conda*, 72 N.J. 229, 234, 370 A.2d 16, 18 (1977) (explaining the surrogate acts as both a judicial officer and a clerk of the court); *see also Newton. v. New Jersey*, No. CV 15-6481 (JLL), 2017 WL 27457, at *4 (D.N.J. Jan. 2, 2017) (concluding that sovereign immunity prohibited a § 1983 claim against the Acting Administrative Officer of the Courts); *Capogrosso v. The Supreme Ct. of New Jersey*, 588 F.3d 180, 185 (3d Cir. 2009) (concluding the State Advisory Committee on Judicial Conduct and its employees were entitled to sovereign immunity from § 1983 claims); *Smith v. Smith*, No. CV 20-9120 (RBK/AMD), 2020 WL 4199782, at *4 (D.N.J. July 22, 2020) (dismissing Section 1983 claims against Governor Murphy and Attorney General Grewal because they were state officials sued in the official capacity and therefore entitled to sovereign immunity).

Moreover, Plaintiff cannot maintain a claim against the state official Defendants for prospective injunctive relief to end an ongoing violation of federal law. To determine whether application of the *Ex parte Young* doctrine is appropriate, "a court need only conduct a straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Pennsylvania Fed'n of Sportsmen's Clubs, Inc. v. Hess*, 297 F.3d 310, 323 (3d Cir. 2002). Although nominally characterized as prospective injunctive relief, in substance Plaintiff seeks to have this Court compel the state courts to act in a certain manner. For instance, he requests this Court to order the New Jersey state courts to hold proper hearings with oversight from an impartial and independent body. This runs afoul of the principle that a federal court lacks jurisdiction in a suit brought by an individual to compel a state to act. *Heine v. Comm'r of The Dep't of Cmty. Affs. of the State of New Jersey*, No. 2:11-5347 (KM) (JBC), 2016 WL 7042069, at *7 (D.N.J. Dec. 1, 2016) (concluding a plaintiff's request that the court order the state of New Jersey to set up a program and funding for

persons affected by rooming house regulations ran afoul of the rule that a federal court cannot compel a state to act in a suit brought by an individual). Nor does Plaintiff identify any *ongoing* violation of federal law. *Nemeth v. Off. of the Clerk of the New Jersey Superior Ct*., No. CV 19-16809 (FLW), 2020 WL 2537754, at *6 (D.N.J. May 19, 2020) (dismissing claims against the New Jersey Superior Court because the plaintiff did not assert there was a continuing violation of federal law). Accordingly, Plaintiff's claims against the state Defendants for prospective injunctive relief are dismissed for lack of subject matter jurisdiction on the basis of 11th Amendment sovereign immunity.

This leaves Plaintiff's claims against the state official Defendants in their individual capacity for damages, which as Defendants point out, are mostly barred by the doctrine of absolute judicial immunity or quasi-judicial immunity.[3]

### B. Absolute Judicial Immunity

Defendants claim, and we agree, the doctrine of absolute judicial immunity bars Plaintiff's claims against the named state court judges. They also contend that this doctrine or its counterpart, quasi-judicial immunity, shields Defendants John Tonelli and Glenn Grant from liability. We concur in this reasoning as well. However, neither of these doctrines prevents the surrogates or deputy surrogates from being amenable to suit. Nevertheless, we find the claims against these state actors to be conclusory and therefore subject to dismissal under Rule 12(b)(6).

To the extent that Plaintiff seeks to hold the state judicial Defendants liable for monetary damages in their individual capacities, these claims are barred by absolute immunity. As a general rule, judges acting in their judicial capacity are absolutely immune (in both their individual and official capacities) from suit for monetary damages under the doctrine of judicial

---

[3] Governor Murphy and Attorney General Grewal were only sued in their official capacity.

13

immunity. *See Mireles v. Waco*, 502 U.S. 9, 9 (1991). "A judge will not be deprived of immunity because the action [s]he took was in error, was done maliciously, or was in excess of [her] authority . . ." *Stump v. Sparkman*, 435 U.S. 349, 356–57 (1978). Nor is immunity vitiated by "allegations of malice or corruption of motive." *Forrester v. White*, 484 U.S. 219, 227 (1988).

There are two exceptions to absolute judicial immunity: (1) "a judge is not immune from liability for nonjudicial actions" and (2) "a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction." *Mireles*, 502 U.S. at 11–12. The defendant who seeks protection under the doctrine of judicial immunity has the "burden of showing that such an exemption is justified." *Montana v. Connor*, 817 F. Supp. 2d 440, 445 (D.N.J. 2011). With respect to the first inquiry, "the factors determining whether an act by a judge is a 'judicial' one relate to the nature of the act itself, i.e., whether it is a function normally performed by a judge, and to the expectations of the parties, i.e., whether they dealt with the judge in his judicial capacity." *Stump*, 435 U.S. at 362. Our task is to "draw the line between truly judicial acts, for which immunity is appropriate, and acts that simply happen to have been done by judges," such as administrative acts. *Gallas v. Supreme Ct. of Pennsylvania*, 211 F.3d 760, 769 (3d Cir. 2000).

The first exception is inapplicable. All of the allegations against the state judicial Defendants pertain to conduct or actions undertaken in their judicial capacity, such as probate Judge Hogan appointing a temporary administrator for an estate, Judge Alvarez affirming a lower court's decision, Judge Kassel dismissing Plaintiff's legal malpractice case, Judge Jacobson refusing to discharge Judge McInerney as administrator of the estate, or Judge Suter refusing to vacate Judge Hogan's order. However wrong these actions may be in the eyes of Plaintiff, they are quintessential judicial functions—authoritatively adjudicating private rights—

14

shielded from liability. *Gallas v. Supreme Ct. of Pennsylvania*, 211 F.3d 760, 770 (3d Cir. 2000) (finding a judge's act of issuing a protection from abuse order was a judicial act, not an administrative one). The fact that the decisions may have been unfair, incorrect, or animated by malice will not vitiate the shield of immunity. *Id.* at 769. Therefore, even though Plaintiff's polemic against the state judges characterizes their decisions as "outlandishly flawed," "more fairy tale than fact," or colored by a conflict of interest, we cannot say that these actions were "nonjudicial."

The second exception is equally inapplicable. With respect to the second inquiry, we must distinguish between acts in the "clear absence of all jurisdiction," which do not enjoy the protection of absolute immunity, and acts that are merely in "excess of jurisdiction," which do enjoy that protection. *Gallas*, 211 F.3d at 769. Even when a judge violates a rule of court procedure by taking the action, so long as the judge had general subject matter jurisdiction over the action, the act is not stripped of its judicial immunity. *Montana v. Connor*, 817 F. Supp. 2d 440, 446 (D.N.J. 2011). In other words, "a judge does not act in the clear absence of all jurisdiction when the judge enters an order at least colorably within the jurisdiction of her court even though a court rule or other procedural constraint required another judge to act in the matter." *Gallas*, 211 F.3d at 771.

Although difficult to discern from the Complaint, Plaintiff seems to suggest that the state judicial Defendants acted in clear absence of all jurisdiction by violating certain administrative directives and failing to make correct decisions. This latter point was already addressed above and is rejected. The former argument is also fatally flawed because it effectively amounts to a concession that Defendants acted in excess of jurisdiction rather than in clear absence of all jurisdiction. Plaintiffs argument is not that Defendants did not have subject matter jurisdiction to

15

hear his case—such as a probate judge trying a criminal case—but rather that they violated some administrative rule by acting contrary to its directive. *Figueroa v. Blackburn*, 208 F.3d 435, 444 (3d Cir. 2000) (explaining if a probate judge should try a criminal case, he would be acting in the clear absence of jurisdiction, but if a judge of a criminal court were to convict a defendant of a non-existence crime, he would be acting in excess of jurisdiction). Therefore, even if we were to accept Plaintiff's allegations that Defendants violated administrative directives by failing to transfer a matter out of the vicinage where a judge sits when there is a conflict of interest and report unethical attorney conduct, such procedural errors would, at most, constitute acts in excess of their jurisdiction. *Mireles*, 502 U.S. at 13 (holding that a judge merely acted in excess of his authority in ordering police officers to use excessive force in bringing an attorney to his courtroom for a calendar call); *see also Figueroa v. Blackburn*, 208 F.3d 435 (3d Cir.2000) (concluding a New Jersey municipal court judge had absolute judicial immunity for her act in holding a party in contempt and jailing him without granting a stay as required by court rule even though in hearing the case she acted contrary to a Supreme Court of New Jersey directive that required her to transfer the case to another judge). Therefore, even accepting Plaintiff's allegations as true, we cannot find that the state judicial Defendants acted in the clear absence of jurisdiction. Accordingly, they are entitled to absolute judicial immunity and the claims asserted against them in their personal capacity for monetary damages will be dismissed with prejudice.

With respect to Plaintiff's claims against Defendants John Tonelli and Glenn Grant, they are barred by the doctrine of quasi-judicial immunity or prosecutorial immunity. "[T]he protections of judicial immunity extend to officials who perform quasi-judicial functions." *Campbell v. Supreme Ct. of New Jersey*, No. CIV.A. 11-555 ES, 2012 WL 1033308, at *10 (D.N.J. Mar. 27, 2012). "'When judicial immunity is extended to officials other than judges, it is

because their judgments are functional[ly] comparab[le] to those of judges—that is, because they, too, exercise a discretionary judgment as a part of their function.'" *Kwasnik v. Leblon*, 228 F. App'x 238, 244 (3d Cir.2007). The acts complained of here seem to involve the exercise of discretion on the part of Defendants. Plaintiff asserts that Judge "McInerney's extensive misconduct—including perjury, fraud, deception, and bigotry demonstrated in his personal life—was formally complained about" to the Acting Administrator of the Court and the Office of the Advisory Committee on Judicial Conduct but no action was taken beyond reply letters finding no misconduct. Thus, to the extent that Plaintiff is challenging the ACJC's *finding* of no misconduct, this decision smacks of judicial discretion and entitles Defendants to quasi-judicial immunity from suit. *Kwasnik v. LeBlon*, 228 F. App'x 238, 244 (3d Cir. 2007). Similarly, to the extent these actions are prosecutorial in nature—that is, refusing to bring charges against an individual for misconduct—the Defendants are protected by prosecutorial immunity. *Id.*

Finally, Plaintiff's claims against the surrogates and deputy surrogates fail under Rule 12(b)(6) because they are extremely conclusory. Plaintiff alleges these Defendants "would often not return phone calls or acknowledge filings by plaintiff's attorney while immediately accommodating [Judge] McInerney's every whim." Clearly this allegation does not challenge the surrogate's conduct as a judge, nor does it implicate quasi-judicial immunity. *Russell v. Richardson*, 905 F.3d 239, 247 (3d Cir. 2018) (explaining quasi-judicial immunity extends to those who make discretionary judgments functionally comparable to judges, those who perform a somewhat different function in the trial process but whose participation is equally indispensable, and those who serve as arms of the court fulfilling a quasi-judicial role at the court's request). Nevertheless, it still fails to even raise the specter of a conspiracy. *Gross-Quatrone v. Mizdol*, 811 F. App'x 95, 100 (3d Cir. 2020) (concluding that an allegation two

defendants were at the same meeting and that one stated he wanted to see the other later did not evince concerted action). Accordingly, Plaintiff's claims against the surrogate and deputy surrogate Defendants are dismissed without prejudice under Rule 12(b)(6).

## IV. CONCLUSION

For the reasons set forth above, Plaintiff's claims against all Defendants except for the surrogates and deputy surrogates are dismissed with prejudice. Plaintiff's claims against the surrogates and deputy surrogates are dismissed without prejudice. Therefore, Defendants' motion to dismiss is granted and Plaintiff's motion for entry of judgment is denied.


Dated: 6/1/2021 /s/ Robert B. Kugler
ROBERT B. KUGLER
United States District Judge